### A09A0269. THE HARPAGON COMPANY, LLC v. HUFF.
(673 SE2d 592)

BLACKBURN, Presiding Judge.

In this declaratory judgment action arising out of a taxpayer's challenge to certain fees added to its county tax bill, taxpayer The Harpagon Company appeals the summary judgment awarded in favor of Lula Huff, the Muscogee County Tax Commissioner. Harpagon argues that $165 in fees and expenses added to its past-due county property tax bill for 2005 taxes exceeded the county's authority and were in any event prematurely imposed. We agree and reverse.

The undisputed facts show that the county assessed taxes in the amount of $97.76 on certain real property owned by Harpagon, which monies were due by December 1, 2005. When Harpagon failed

---

to pay those taxes, the county imposed a 10 percent penalty on December 2 ($9.78) as authorized by OCGA § 48-5-24 (d) and further imposed a "Notice Fee" of $50 ostensibly under the authority of OCGA § 48-5-161 (c) (2). The county required that Harpagon would have to pay these amounts to satisfy the tax bill.

On May 24, 2006, the county filed an unsigned and undated writ of fi. fa. in the county property records, which reflected the principal amount of $97.76, the $9.78 penalty, and $15 in fi. fa. recording costs. At some point prior to December 1, 2006,[1] the county imposed an additional $115 in "Legal Research" fees to Harpagon's account. This was to cover legal research expenses such as examining title and reviewing bankruptcy records. On December 12, 2006, the county sent a document entitled "Entry and Notice of Levy" to Harpagon, which notified Harpagon of the recorded fi. fa. and of a tax sale of the property scheduled for February 2007 (to satisfy the amount due).[2] When Harpagon protested, the county postponed the tax sale, following which Harpagon sued the county for declaratory and injunctive relief to prevent the collection of the $165 (the $50 "Notice Fee" and the $115 "Legal Research" fee). Harpagon later amended the complaint to include a count seeking to enjoin the tax commissioner from performing a contract between the county and a collection agent, which authorized the collection agent to receive the $165 for its assistance in the county's collection efforts.

Both parties moved for summary judgment. Finding that the $165 was a valid fee that had been timely imposed, and that the contract was enforceable, the trial court granted summary judgment to the county on all claims (concomitantly denying summary judgment to Harpagon). Harpagon appeals.

1. Harpagon first argues that the county had no power to impose any of the $165 fee. We agree as to any amount over $50.

The controlling statute is OCGA § 48-5-161 (c) (2), which provides:

> Once a levy is made or posted on the property of a delinquent or defaulting taxpayer, the sheriff or ex officio sheriff shall collect, in addition to any other costs, commissions, interest, and penalties, the actual expenses incurred

---

[1] According to its computer records, the county posted a $115 charge to the tax bill on January 23, 2006 for "Legal Research." However, the deputy tax commissioner that collected delinquent taxes testified that despite this county record, this amount in fact was not posted to the taxpayer's account until November 30, 2006, which is the same date that he testified that levy occurred. For purposes of this appeal, this discrepancy in dates plays no role in our decision.

[2] Curiously, the notice did not specify the amount due on the property as required by OCGA § 48-3-9 (a).

by the county in issuing the execution and administering the levy by imposing a levy administration fee which shall be 5 percent of the delinquent tax or $250.00, whichever is the lesser. Regardless of any other provision of this paragraph, however, no such levy administration fee shall be less than $50.00.

Interpreting this statute, *Mayor &c. of Fort Valley v. Grills*[3] considered a challenge to the "collection fee" portion of a city tax bill of $307, which consisted of unpaid property taxes of $188, costs and interest of $44, and a "collection fee" of $75. According to the city, the collection fee represented a charge for reimbursement of the city's costs and expenses associated with the delinquent tax collection process, including "the costs of examining the delinquent tax list, researching title, records and owners' current addresses, and preparing and mailing correspondence to owners." Id. at 397-398. The trial court held that the fee was unauthorized, and we agreed on the grounds that its amount was excessive and that it was imposed prior to a levy occurring. Id. at 398-399.

With regard to the amount, we held that under OCGA § 48-5-161 (c) (2), the city could only collect its expenses incurred in issuing the execution and administering the levy "by imposing a levy administration fee of five percent of the delinquent tax or $250, whichever is less, but no less than $50." *Grills*, 282 Ga. App. at 398. We held that the expenses represented by the $75 collection fee fell squarely into this category of a levy administration fee, and we rejected the argument that these expenses were "other costs" that were not subject to the limits imposed by the statute.[4] Id. We further held that a properly calculated fee could not be collected prior to a levy in any case. Id. at 398-399. Accordingly, we affirmed the trial court's ruling that the fee was unauthorized. Id. at 399.

This same rationale applies here. The county's efforts to collect for its expenses in notifying Harpagon and in researching title and other records all fell squarely within the meaning of "levy administration fee," which here could only amount to $50. As in *Grills*, we reject the county's attempt to characterize these expenses as something other than "actual expenses incurred by the county in issuing the execution and administering the levy." See OCGA § 48-5-161 (c) (2). Although it is true that the statute contemplates that the county may collect this levy administration fee "in addition to any other costs, commissions, interest, and penalties," these other costs,

---

[3] *Mayor &c. of Fort Valley v. Grills*, 282 Ga. App. 397 (638 SE2d 830) (2006).
[4] Under these limits, the levy administration fee in *Grills* should have been $50 (if timely imposed).

commissions, interest, and penalties refer to those expressly authorized by other statutes, including (i) the costs of filing a fi. fa. and of advertising the property for sale (see OCGA §§ 15-6-77; 48-5-137.1); (ii) the commissions and fees to be paid to the sheriff under OCGA § 15-16-21 (b); (iii) the interest of one percent per month authorized by OCGA § 48-2-40; and (iv) the ten percent penalty authorized by OCGA § 48-5-24 (d). To interpret the statute otherwise would permit a county to impose unlimited collection fees on the taxpayer under the guise of "other costs" not specified in a statute and would contravene the well-established principle that "[a] county can only exercise the power of taxation as conferred upon it either directly by the Constitution or by the General Assembly when authorized by the Constitution. If there is any doubt as to the power of the county to tax in a particular instance, it must be resolved in the negative." (Punctuation omitted.) *DeKalb County v. Brown Builders Co.*[5] See also *The Mousetrap of Atlanta, Inc. v. Blackmon*[6] (a tax "statute is to be construed most strongly against the government and in favor of the citizen in determining whether its imposition is authorized").

Accordingly, the only amount that the county here could have collected for its levy administration costs was $50.

2. The next question is whether the levy administration fee here (assuming it were only the $50 authorized by statute) was timely imposed. We hold it was not.

*Grills* emphasized that "OCGA § 48-5-161 (c) (2) expressly provides that the expenses of execution and levy are collectible *once a levy is made*." (Emphasis in original.) Supra, 282 Ga. App. at 398. Accordingly, *Grills* held that the local government had not shown it was authorized to collect a "fee for expenses incurred in connection with the tax execution prior to a levy." Id. at 399.

The county contends that a levy has occurred here, thus authorizing it to collect at least the $50 fee. The county points to several possible events as the levy: the recordation of the fi. fa. in May 2006; its representative's testimony that a levy occurred on November 30, 2006 when the county's collection agent was told to begin phase two of the collection process; and the sending of the "Entry and Notice of Levy" to Harpagon on December 12, 2006. However, none of these qualify as a "levy." As stated in Black's Law Dictionary, a "levy" is "[t]he legally sanctioned seizure and sale of property." Black's Law Dictionary, p. 919 (7th ed. 1999). It is not the issuance of a fi. fa. or

---

[5] *DeKalb County v. Brown Builders Co.*, 227 Ga. 777, 778 (2) (183 SE2d 367) (1971).

[6] *The Mousetrap of Atlanta, Inc. v. Blackmon*, 129 Ga. App. 805, 806, n. 1 (201 SE2d 330) (1973).

the giving of a notice that property is about to be sold under levy; rather, it is the actual sale itself. Thus, in *Grills* we referred to the "tax sale" as the point at which a levy occurs and therefore the point at which the levy administration fee could be collected. Supra, 282 Ga. App. at 398. We agreed with the taxpayer's argument that "the law only allows the collection of such a fee after a tax sale, and that [because] no such sale occurred here," the city in *Grills* was not authorized to collect a levy administration fee. Id. The occurrence of the tax sale itself is the key moment at which the levy administration fee may be imposed and collected; it may not be imposed and collected before that point.

It is undisputed that no tax sale occurred here. Accordingly, no levy occurred that would have authorized the imposition and collection of the $50 levy administration fee. None of the disputed $165 amount was therefore properly imposed by the county.

3. In its final enumeration of error, Harpagon argues that the court erred in holding that the contract between the county and its collection agent was enforceable. We agree. Because that contract expressly provides for the imposition and collection of levy administration fees from taxpayers in excess of the amounts authorized by statute and at a point prior to the levy, the contract is illegal and therefore unenforceable. See OCGA § 13-8-1 ("[a] contract to do an . . . illegal thing is void"); OCGA § 13-8-2 (a) ("[a] contract which is against the policy of the law cannot be enforced"). See also *Hanley v. Savannah Bank & Trust Co.*[7] ("[t]he contract alleged and relied upon in this case was supported in part by a consideration which was illegal and void, as against public policy, and the contract is therefore unenforceable"). As a taxpayer, Harpagon had the authority to challenge that contract as illegal and to have the tax commissioner enjoined from carrying it into effect. See *Floyd v. Thomas*[8] ("[a] court of equity, at the instance of citizens and taxpayers of a county, may enjoin the county commissioners from carrying into effect an . . . illegal contract"); *Ferguson v. Randolph County*[9] ("[a] taxpayer may bring a suit against county officials to enjoin them from doing unauthorized or illegal acts"). The court erred in failing to enjoin the tax commissioner from carrying out the illegal contract.

Accordingly, the trial court erred in granting summary judgment to Huff and in also denying summary judgment to Harpagon. Under these undisputed facts, Harpagon was entitled to summary judgment in its favor on all counts.

---

[7] *Hanley v. Savannah Bank & Trust Co.*, 208 Ga. 585, 587 (68 SE2d 581) (1952).
[8] *Floyd v. Thomas*, 211 Ga. 656 (1) (87 SE2d 846) (1955).
[9] *Ferguson v. Randolph County*, 211 Ga. 103, 109 (2) (84 SE2d 70) (1954).

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED FEBRUARY 13, 2009

*Proctor Hutchins, Robert J. Proctor, Cristine L. Patterson*, for appellant.

*Page, Scrantom, Sprouse, Tucker & Ford, James C. Clark, Jr., Travis C. Hargrove*, for appellee.

*Troutman Sanders, T. Jerry Jackson, Kevin G. Meeks, Andrew, Merritt, Reilly & Smith, Michael T. Smith*, amici curiae.